No. 19,412.

EUGENE MILLER and IDA MILLER, *Appellees*, V. ARMOUR & COMPANY and THE ARMOUR CAR LINES, *Appellants*, et al.

OPINION DENYING A REHEARING.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Injury to Employee—Negligence of Fellow Servant.* An employer is not liable for an injury to his employee caused by the nonnegligent act of a fellow servant of the injured employee.

2. SAME—*Injuries—Dangerous Place to Work—Assumption of Risk.* If the place where an employee works is dangerous, and the dangers are open and known, and an employee continues to work at that place, making no complaint or suggestion concerning such dangers, he assumes the risk connected with his work.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion denying a rehearing filed June 12, 1915. (For original opinion of reversal see *ante,* p. 195, 147 Pac. 1093.)

*C. Angevine, J. K. Cubbison,* and *William G. Holt,* all of Kansas City, for the appellants.

*James F. Getty,* of Kansas City, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs have filed an application for a rehearing which the court has carefully considered. One ground of complaint is, in substance, that some of the facts stated in the opinion were based on evidence introduced by the defendants and should not be considered on a demurrer to the plaintiffs' evidence. There is merit in this criticism. Because of this we restate the issues and the facts, not for the purpose of determining the demurrer to the evidence, but to determine whether or not the plaintiffs can recover on the facts established by all the evidence in their favor.

The petition, among other things, alleges that defendants Armour & Company and Armour Car Lines maintained and operated a car repair shop, where large numbers of men were employed in repairing and rebuilding cars; that in the shop were a number of railroad tracks running parallel with each other; that defendant Luther L. Lucky was the foreman or superintendent of the shop; "that between the said last mentioned tracks in said shop and in close proximity to the sides of cars when standing thereon, at and prior to the time aforesaid, the defendants . . . negligently and carelessly, and in disregard of their duty to furnish to the employees of said defendants . . . including said Robert Miller, deceased, a reasonably safe place to work, permanently placed and fixed a certain apparatus, known as a forge, used for the purpose of heating the rivets for use as aforesaid"; and (quoting from defendants' brief) "negligently and in disregard of their said duty failed to place over and above said forge and the space about the same where an employee was obliged to stand when working on and about said

forge, a canopy, cover, screen or other means of protection from being struck and injured by tools or other objects falling from the roofs of cars while being repaired on said tracks; . . . that at said time Armour & Company, Armour Car Lines and Luther L. Lucky had placed on the top or roof of said car the defendant Garrett E. Groomer, with directions to remove and repair certain tin and sheet iron that was placed thereon, and said Groomer while in the performance of said work carelessly permitted an iron or steel bar, which he was using, to fall or drop from the roof of said car, which, by reason of Armour & Company, Armour Car Lines and Luther L. Lucky negligently failing to furnish a canopy, cover, screen or other means of protection to said Robert Miller while working on or about said forge, struck said Robert Miller, inflicting such injuries upon him that he died."

The facts to support the plaintiffs' claim, which the evidence tends to prove, were as follows: Within the grounds, and a part of the plant of Armour & Company, in Kansas City, Kan., were shops for repairing railroad cars, occupying ground about 128 feet wide by 280 feet long. In these shops were a number of railroad tracks running parallel with each other. The roofs of the buildings were supported by a number of posts, and throughout was a system of pipes, conveying compressed air used for mechanical purposes in repairing cars. Running down one of these posts to within about a foot or eighteen inches of the floor, between tracks known as 14 and 15, was an air-line pipe. From this point the pipe ran about at right angles from the post, through an elbow, a distance of about three feet, where it was attached to a forge used for heating rivets. This attachment was made by a metal piece called a union. This forge, when so attached, was located half way between tracks 14 and 15, and was about 16 or 20 inches square, and about 24 or 30 inches high. These tracks were about 14 feet apart. Track

Miller v. Armour & Co.

15 was used for building and repairing steel under-frames for cars. These underframes were made by riveting together pieces of steel. Rivets were heated in this forge, taken from the forge by the rivet heater to the underframe, placed in the holes, and by other workmen riveted with an air hammer. The underframe was placed alongside and convenient to the forge. On track 14 were placed cars on which repairs were made to the superstructure. The covering was often torn off and was thrown or fell to the floor below. The materials thus torn off were the metal covering, timbers, boards, and nails, composing the roof, or whatever part of the car was removed. Throughout the entire shop materials composing the roofs and superstructures of cars being repaired were thrown and allowed to fall to the floor of the shop. Around the car being repaired was a 14-inch plank, suspended from the roof of the building, about three feet below the top, and about 18 inches from the side of the car, and on this platform the men stood when working on the car. There was no canopy or covering over or around the forge. The distance from the center of the forge, or post to which it was attached, to the nearest rail of either track 14 or 15, was seven feet. When a car was on track 14, its sides extended two feet over the rail, leaving five feet between the center of the forge and the side of the car. About five o'clock in the afternoon on the day before the injury occurred, car No. 8055 was set on track 14, by the side of this forge, to be repaired. On this day there were flurries of snow. The temperature was below freezing all day and all night. On the morning of the accident, somewhere near seven o'clock, defendant Groomer was directed to go on top of this car and remove the metal roofing. This roofing was removed with an iron bar about four feet long and an inch or an inch and a quarter thick, weighing from 10 to 15 pounds. On one end of the bar were claws for pulling nails. The other end was sharpened.

Snow had been swept from the roof of this car, but some remained. Groomer wore a pair of cloth gloves, which had become somewhat damp. Using the claw end of his bar, he raised a portion of the metal roofing, pulled out several nails, reversed the bar, struck at the roofing, intending to force the bar under the metal, but missed, and struck on top of the metal. The bar slipped, went out of his hands downward at an angle of forty-five degrees, and struck Robert Miller in the side, penetrating his body and causing his death. He was then standing warming his hands at this forge. At the time of his death he had been heating rivets at this forge about two months. He was then about eighteen years old.

We adhere to our former opinion in this case, holding that the facts established by the evidence do not show negligence on the part of the defendants. There are additional reasons why the plaintiffs can not recover.

Groomer was a fellow servant with Miller. He may have been negligent in handling the bar, but the evidence does not show such negligence. The jury said he was not negligent. In any event, Groomer being a fellow servant with Miller, the employer is not liable for Miller's death, caused by the act of Groomer. (*K. P. Railway Co. v. Salmon, Adm'x,* 11 Kan. 83; *K. P. Rly. Co. v. Salmon,* 14 Kan. 512, 522; *Beeson v. Busenbark,* 44 Kan. 669, 672, 25 Pac. 48; *Bridge Co. v. Miller,* 71 Kan. 13, 80 Pac. 18; *Gas Co. v. Crist,* 78 Kan. 887, 97 Pac. 1134; *Lunn v. Morris,* 81 Kan. 94, 105 Pac. 15.) While not directly in point, see *Iliff v. Cudahy,* 83 Kan. 588, 112 Pac. 165; and *Harper v. Cement Co.,* 83 Kan. 788, 112 Pac. 626.

Robert Miller had been working at this place for some time—about two months. He knew of the conditions attending the work there. Whatever danger there was connected with the work at the forge was open and known. There was no evidence to show that

Miller complained to any one of any danger. He assumed the risk of whatever danger there may have been attending upon the work in that place. (*Donnelly v. Packing Co.*, 68 Kan. 653, 75 Pac. 1017; *Bridge Co. v. Miller,* supra.)

After reconsideration, giving the facts established by the evidence the most favorable interpretation for the plaintiffs, we are of the opinion that the plaintiffs can not recover; that the demurrer to the plaintiffs' evidence should have been sustained; and that judgment should have been rendered for the defendants. The former judgment of this court reversing the judgment of the district court is adhered to. The cause is remanded, with instructions to render judgment for the defendants. The petition for a rehearing is denied.